and welcome to the 11th Circuit sitting in Atlanta this week. Judge Grant and I are so pleased to have with us Judge Ashley Royal from the Middle District of Georgia, a very well respected judge and he has a busy docket at home so we're very grateful that he's willing to come down and help us out this week. We have familiarized ourselves with your cases so we urge you to go right to the heart of your argument, talk about your most important points. You will not waive anything in your brief by not mentioning it in oral argument here today. You're probably familiar with our lighting system, but in case you're not, the yellow light will come on when you have two minutes left in your allotted time. To the appellant, that's of course two minutes left in the time that you have not reserved for rebuttal. After the second case today, we'll be taking a 15-minute break so that we can reconstitute the panel. Let's begin with the case of United States versus Joe Pegg. Bruce Zimmett. Good morning. Judge Prior, Judge Grant, Judge Royal, my name is Bruce Zimmett. I was not Mr. Pegg's trial counsel. I represented his wife, Dolores Pegg, who was acquitted of all three counts in the indictment. Their daughter, Dolores Dede Pegg, was likewise acquitted. This is a case which involves what's commonly known as third-party cooperation. In this case, Mr. Pegg had been incarcerated since 1994. He sought a reduction of his sentence based upon cooperation. Obviously, he was not in a position to cooperate himself, and he sought someone on the outside to cooperate on his behalf to get credit for that. The issue is, as to the first two counts, whether there's sufficient evidence to satisfy what Mr. Pegg was charged with. The two charges in counts one and two relate to obstruction of justice, the first being conspiracy to obstruct, the second being obstruction. Most of the obstruction counts relate to 18 U.S.C. section 1503. The problem with what happened in this case, as far as the sufficiency evidence is concerned, is that essentially the government filed and charged Mr. Pegg with the wrong obstruction statute. They could have, and they did charge him in count one with conspiracy to defraud the United States. That certainly would be viable under the facts circumstances. However, the jury acquitted Mr. Pegg on that count with a special verdict. 1503 does not apply since there was not a pending judicial matter that was in existence at the time of the alleged obstruction. Why isn't a Rule 35 motion a pending matter? Why isn't it that that opens sentencing back up? That's the way I can see it. That's the way I know. It would, Judge, initially, if it was within the one-year period that Rule 35 is allowed to be filed where the court maintains jurisdiction. This is, in essence, something where the court loses jurisdiction. The government can apply to reassert the jurisdiction based upon a time period as expired. So, it's renewed. What about U.S. v. McHale, which, as a federal proceeding, does not have to be pending at the time? Under Fernandez's case, it says a motion to reduce sentences is one of the types of things that would qualify as a pending motion. Well, the problem is, is that at the time that the obstruction took place, the obstructions of the U.S. Attorney's Office investigation, it's not the obstruction of any proceeding that will be had in front of the district court. In fact, the district court might not even consider the issue whether there was any payment that was made to a third party, by a third party, or to a third party for the case. Well, I have to consider a Rule 35 motion in sentencing. That's reopening sentencing. So, it's not clear what you mean by not going to be considered. The point is that the obstruction, the heart of what is being alleged, is of the U.S. Attorney's investigation. There's no obstruction relating to the court proceeding itself. Well, Mr. Pegg was also charged with making a false statement in violation of Section 1001. Correct. And the sufficiency argument only goes to the first two counts. The objections asked, or the issues on appeal relating to 1001, relate to the dynamics of the statement that was given in the federal prison, and whether or not Miranda rights should have been given under the circumstances. Obviously, a person who's incarcerated does not automatically be entitled to have Miranda rights read to them. However, under these circumstances, with what was happening under the circumstances of the case, the totality of those circumstances, Miranda rights should have been given. When the interviews began, it began with an interview relating to his quote, cooperation with the government. By the time we got to the part where we are submitting Miranda rights should have been given, he was clearly a target of a criminal investigation. Have you found a case in which there was a defendant or someone under investigation who was represented by counsel during the questioning where there was, where the court found a Miranda violation? I've not found that case, Judge, but I think these facts are unique under the circumstances of what was happening with this counsel at the time. Just having a body there who is a lawyer is not sufficient to satisfy the Miranda requirements. Certainly, he needed to know that anything he could be saying could and would be used against him. The mere fact that there was an attorney that was present during the course of the interview, and we suggested in our brief there are other factors relating to this attorney, which would mitigate her role as an advisor, and she was in fact more of an advocate for him to get his resolution of his case with the Rule 35, as opposed to protecting him against potential criminal violations, which really what was happening at the time of that interview. The Rule 35 was really off the table at that point, if you look at the totality of the facts of the case. This was a criminal investigation concerning whether there was obstruction of justice, obstruction of the U.S. Attorney's Office policy, inserting payment of monies to Rule 35 cooperators. I'm sorry, I thought you had a question, Judge Breyer. Well, the Rule 35 motion always has some preceding investigation and work leading up to the Rule 35 motion without having this investigation and this work being done to determine whether or not there's been valid cooperation and helpful cooperation. Sure, and that's part of the package, isn't it? That's the decision-making process of the U.S. Attorney, of the Department of Justice, as to whether or not to apply to the court for Rule 35 for sentence reduction or sentence There's no clear showing or no clear evidence that that is something that would be considered by the sentencing court in determining whether to reduce the sentence or not. It could play a part in the underlying criminal case where the person cooperated, because it's something that might be relevant to the motivation for the person to cooperate, as far as the defendant that's been charged with whatever activities the cooperator led to Rule 35 is not contingent upon whether there was payment or not to the cooperator. Now certainly a court might make that inquiry, but similar to the other cases which have evaluated the omnibus clause of the obstruction statute, there's no clear nexus or connection between what the alleged payment to the third-party cooperator and the judicial proceeding. And that's what needs to be required for 1503, as well as conspiracy to violate 1503. And that was not established because those are things that potentially could happen, but aren't something which are locked in that would happen. And certainly under the case law, especially the Supreme Court case Maranello, which evaluated analogous IRS statute, they found there was not a sufficient nexus or connection between the two. So under those circumstances, we would respectfully submit that judgment acquittal should have been granted as to count one and to count two. Now, that's not to say there could not have been a viable obstruction prosecution. 1803.15.10, 1803.15.12 could have been prosecuted, could have been charged with the fact pattern that we had. Those weren't charged. Those do not require the judicial proceeding to be pending or realistically to be formed or to occur. But in fact, those weren't charged. And what the court can only consider today is what was charged and sufficient evidence as to what was actually charged. In addition to that, the other points that we have, which we think are significant, are the labeling of what was, in fact, a policy within the Middle District of Florida U.S. Attorney's Office of actually being law. There is no law that prevents third-party cooperators from being paid. Didn't the trial judge clear that up in his instructions? Did he outline what the elements of the crime were? Well, actually, the trial court refused to give an instruction which specifically said that. And the question is whether the other instructions encompass that. And the problem that we would submit to the court was, is because of the government constantly suggesting that to the jury, in fact, even arguing that in closing argument, it was incumbent upon the judge to clarify that what, in fact, was in front of the jury was not a violation of law relating to those payments, or it was arguably a violation of policy of the U.S. Attorney's Office. And certainly that is something that was not, if you look at all the instructions, the elements of the crime don't get anywhere near what that instruction would entail. But here the conduct was that the payment was made and he lied about it. Well, the payment was made. Actually, that's not what's charged. The payment was paid and the fact the payment was made was concealed. Exactly. Yeah. Well, not being told. So it's not simply that that conduct was illegal, making the payment. Well, lying about something which is a violation of a policy, okay, is not a crime concerning the crime of obstruction, okay? It might be a crime of lying, a 1001 violation, but not the underlying crime. I think the pertinent issue is whether or not payment of money a third party cooperated is, in fact, a crime or not. And that's what the jury's misled to believe it was based upon what occurred. Let me ask you a question. Go ahead. Go ahead. I just wanted to ask you a question before you sit down about your motion. You made a motion asking that the opinion be unpublished, and I understand the reason for that. But given that unpublished opinions are still available online and on Lexis and Westlaw, is that really the relief that you want? Under the circumstances of the prison, it's the best available relief. However, since that time, Mr. Pegg has been placed under house arrest. He's no longer in the institution, so he'll be serving a sentence under house arrest. So I think it's still pertinent. He could be violated, go back to prison, but we still would ask for that relief. So he's been released from prison, and he is now in his home? He's in a halfway house based upon the first act because of his age and the amount of time that he's already served, yes. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Holly Gershow on behalf of the United States. There is a direct nexus between Pegg's obstructive conduct and the judicial proceeding. The whole point of Pegg's scheme was to cause the United States to file a Rule 35 motion in order to persuade the judge to reduce his sentence in his criminal case. There couldn't be a more direct connection between his actions. His actions weren't just the paying of third-party cooperation. It was the paying of third-party cooperation in order to deceive the United States into filing a motion that it wouldn't have otherwise done. So there's absolutely sufficient evidence to support his convictions for 1503. That was the correct crime to charge, and the evidence supports it. Now, with respect to the jury instructions, the district court did not abuse its discretion in declining to give his... Sorry, did you have a question? He did not abuse his discretion declining to give these not-illegal instructions because, as Judge Roy pointed out, they were covered by the jury instructions that were given, and also they would have been confusing to the jury because, as Judge Pryor pointed out, the crime was not just the paying of third-party cooperation. The crime was paying for third-party cooperation, concealing those payments from the United States, lying about those payments to the United States in order to induce it to file the Rule 35 motion. So an instruction that it's not illegal to pay for third-party cooperation seeks to excise one part of the crime and say, this isn't a crime, so then they can stand up and say, look, this case is just about third-party cooperation, and you've heard the judge say that that's not a crime. But that was not the case, and that would have confused the jury.  as the district court recognized in denying that jury instruction. And, in fact, Dolores Pegg did make that argument to the jury. Mr. Zimmer, representing Ms. Dolores Pegg, argued, AUSA Perry testified that it's not a crime to violate the U.S. Attorney's policy. And then he pointed to the jury instructions, and he said, you didn't hear an instruction that it's a crime to pay for third-party cooperation if that were the law, Her Honor would have read that instruction to you. And, again, that was also not the case that the United States was presenting. The United States was presenting a case that it was a crime to pay for third-party cooperation because they concealed it from the United States in order to induce them to file this Rule 35 motion. Now, turning from Dolores' closing to the prosecutor's closing, to the extent that any of the prosecutor's statements may have misstated the law, any misstatement was rendered harmless by the fact that the district court correctly instructed the jury on the elements of the crime, and twice during the trial told the jury the district court is the sole source of the law. And, finally, the district court also— Does that necessarily hold up where the two sides appear to be arguing different points about whether it's the law or not, and the district court doesn't instruct the jury either way? Couldn't that lead the jury to infer one way or the other? I don't think it could have, Your Honor, because the jury instructions required a corrupt intent, which requires dishonesty. And so if the jury was following its instructions, it had to find more than just paying for third-party cooperation. It had to find this dishonest element, the concealing from the United States. And, in addition, that was, again, not the case that the United States presented. The case that the United States presented from opening statement to rebuttal closing, this case is not about violating the U.S. attorney's policy. This case is about a fraud and a cover-up. So based on the way that the case was presented, based on the instructions that were given to the jury, there's not a substantial likelihood that these isolated statements caused Pegg to have an unfair trial, which is the standard for a mistrial. Now, had he requested a curative instruction, we'd be in a different procedural posture, but that's not what he asked for. He asked for a mistrial, and under the standards for a mistrial, the district court did not abuse its discretion by declining to grant a mistrial. I want to make sure I also understand your argument about when the judicial proceeding issues started. Is your argument that as long as someone is sentenced and they're carrying out their sentence, there is, in a sense, a judicial proceeding? Or does someone have to make some sort of move toward, say, a Rule 35 motion? The judicial proceeding remains pending while there's a sentence being served because there's always the possibility of filing a Rule 35 motion or other motions. So there's a motion under the First Step Act, and there has to be a proceeding in which those motions can be filed. And so based on that and the evidence that was presented to the jury, which was that he was still serving his sentence and that he had the availability for the government to file a Rule 35 motion, the jury could have found that the case remained pending at least for those purposes. That's a pretty broad argument, though. Could it apply to things other than a potential motion in court? What are the bounds of that argument that any time someone's serving a sentence, a judicial proceeding is still ongoing? There has to be a direct nexus. That's what Aguilar talks about. In order to constrain the due administration of justice, there has to be a judicial proceeding. So the action would have had to have something that has a direct nexus, a relationship in time logic or causation to the judicial proceeding. So not everything that a defendant could do while serving his sentence would qualify as obstruction under 1503. But whereas here the defendant is doing something that is directly relating to the judge's due administration of justice in a criminal case that he is still serving a sentence for, still had an outstanding fine, then it is a pending judicial proceeding for those purposes. I think that's consistent with Fernandez, which said that the criminal case remained pending because there was an ability to file a Rule 35 motion. And the fact that whether it's the one-year Rule 35 motion or the Rule 35 motion that can be filed by the government at any time, the point is it's a motion under the federal rules of criminal procedure. There has to be a criminal case in which to file that motion. The case has to be pending at least for those purposes. So I'm not saying that the criminal case is pending so broadly that anything had pegged,  that clearly wouldn't have the direct nexus to the due administration of justice. What if someone didn't pay their fine on time? Would that qualify under the statute? Do you mean would that make the case? Would that be a sufficient nexus to a criminal proceeding? If they attempted to obstruct the collection of the fine? No, if they just didn't pay it on time. They just didn't pay it on time. Well, again, it would depend on what they were doing. If they were acting corruptly, if they were deceiving the judge or doing something to cause the judge to be deceived about their ability to pay the fine, then that could qualify as a violation of 1503. Unless there's further questions on the obstruction issue, I would turn to the suppression issue. And under the House of Actors, it's clear that PEG was not in custody and therefore Miranda warnings were not required. This was a completely consensual, voluntary interview between PEG and the U.S. Attorney's Office. PEG consented to this meeting because he wanted to get a Rule 35 motion and he knew if he didn't have this meeting, there was no chance he was going to get one. And during the actual meeting, he was represented by counsel. He was not intimidated. He was not threatened. There was no rough language. It was a cordial interview. He was allowed to leave to get a drink. Well, at the end of the transcript, Muldrow repeatedly warned PEG that providing false statements was a crime, referred to consequences that might occur to his family and friends, suggesting that the cooperators might turn on him. Why does that? I mean, to me, that seems like the interview became much more coercive at the end after they took the break. It certainly upped the ante, but suggesting to somebody that they're a suspect doesn't mean that they're not free to leave, which is the standard for custody. The standard is would an objective, innocent person in PEG's position feel free to leave? And I think at that point, when it got a little bit confrontational, that's the point at which someone would say, okay, this is taking a turn I don't like. I want to leave. And there's nothing about this interview that suggested that he wouldn't have been able to do so if he wanted to. And in fact, after Muldrow made those statements, they said, we're going to let you talk to your attorney, leave the room. They left the room. PEG asked for them to come back. And once he came back, he, without having been asked a further question, again lied and said, I would rather serve my jail time than get anyone in trouble. I definitely didn't pay for any third-party cooperation. Is there any case saying that if an attorney is present, that means that you don't have to give a Miranda warning? I'm not aware of that case, and I don't think that would be the standard, because, again, the standard is not were they represented by counsel. It's would a reasonable person in that position feel free to leave? And definitely having a lawyer present makes it more likely that a defendant would feel like if they said, you know what, I don't want to talk anymore, I want to go, that they've got a lawyer who's a buffer between them and the law enforcement officers. And now they're arguing, well, she was conflicted, but PEG didn't know that she was conflicted, so how could it affect how an objective person would view this situation? And certainly the United States didn't have any idea about her alleged conflict. So the idea that Miranda warnings could be, and the necessity for the government to give Miranda warnings to a suspect based on an unknown conflict with their lawyer would place an impossible burden for the United States to reach and would essentially require Miranda warnings every time a lawyer was present. So, I mean, PEG even says to the AUSAs at one point during this interview that I've been wanting to talk to you. I mean, this was a completely voluntary interview. The only reason he didn't leave is because he wanted a Rule 35 motion, and those types of subjective pressures are not the types of pressures that turn a case from voluntary to custodial. Unless there are any further questions, I would submit on the briefs and ask the court to affirm. Thank you. Thank you. The two instances cited in page 34 of our initial brief where the government in closing argument talks about the illegalities of the actions relate to violations of the U.S. Attorney's Office manual or guidelines. And these are two instances where it says, and one says, and why conceal it from the government? Because it's illegal. And that's the concept of the payment to the third party. The next one, he also acknowledged it's against the law, referring to Mr. PEG's statement that was so pasted in the prison. On both occasions, mistrials were requested, cautionary instructions were requested in each of those times, and that would have been remedied had the court given the requested jury instruction. We had a charge conference prior to the time of the closing argument in which that instruction was requested, not given, and when it wasn't given, and the government obviously knew it wasn't going to be given, these comments came out during the course of their closing argument. Is it clear that those two comments were referring only to the limited question of whether it's illegal to pay a third party cooperator as opposed to whether it's illegal to do that conduct in a way that is obstructive? Payment to a third party cooperator. Right, because the reason I ask is there are many things that are not illegal in and of themselves, but if the person commits those actions with the intent to obstruct justice, then they certainly become illegal in that sense. Was there any gray area in those statements that might have allowed for that conclusion? The context of the statements were that payments were made, the communications on the phone which were intercepted and played to the jury, some of them, did not specifically talk about what was said. The government said they were coded conversations, and they were concealing the conduct that took place because they knew it was illegal. That's the full context that led up to the government's statement that they knew it was illegal. So what they're saying is, and things seem pretty clear to the jury, is that if you make payments, which the U.S. attorneys say you're not allowed to pay, and you try to conceal that, the reason you're trying to conceal it is because you know what you're doing is illegal, and it's not. And clearly it would not be confusing to tell the jury what the law really is. It seems unusual that the government would be arguing that a jury is not entitled to know what the law is because if they know what it is, it's going to be confusing to them. It doesn't seem the way that a defendant should be tried and a defendant should have his case heard. As far as a case being pending, we have specific rules as to how long you can challenge a case. 2255 post-conviction time periods are established. That says once those time periods have expired, you cannot challenge a case. How could a case still be pending if you can't challenge a case after a certain period of time? Mr. Pegg is in his 17th year of his incarceration. To say that the case is still pending at that point would suggest that he has viable remedies that he could use. The only thing that can happen during that time period, the government can ask the court to consider something, but that's a far stretch from saying that the case is actually pending at that point from the standpoint of the obstruction statutes. So it's creating something which doesn't exist. The government hasn't cited any case that would suggest that a person in their 17th year of incarceration, that their case is still pending. And absent a case that even comes near that or close to that, we would suggest that this court would be creating new law beyond which is already established for a standpoint of the obstruction statute. And it would seem that it's rewarding the government for charging the wrong statute and allowing Pegg's conviction to stand based on something that really wasn't in existence at the time. As far as the Miranda situation, the comment I think which is probably the most offensive was Muldry saying to Pegg, you have to get in front of this now. Basically telling him that if you don't come in and confess to what's happening, you're going to have a legal problem. If that is not custodial, then really nothing should be custodial. And that's right in the transcript what was played to the jury. It's hard to say, I think, that nothing should be custodial if that's not custodial, right? I think you're maybe pushing a little... Maybe it's embellishment to a degree. But certainly... And certainly that kind of a statement is certainly consistent with somebody that should have reason to believe that they are in custody, and certainly Miranda rights should be given at that point. Doesn't that statement imply a choice on the part of Mr. Pegg that you should choose to do this in order to help yourself in some way, as opposed to you have to do this because you are in custody? Well, if you have to do this, OK, if you want to get some kind of relief, if you have a legal problem, you better get in front of that legal problem, right? And we're questioning about that, and we want you to tell us that you, in fact, did this, paid money, and therefore you will be able to get in front of it. And under those circumstances, we would suggest that, in fact, that is custodial. I see my time has expired. Thank you, Judge. Thank you.